# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**MICHAEL JAMES POUCHERT,**
        **Plaintiff,**

        **v.**                                         **Case No. 26-CV-1074**

**MARTIN J DE VRIES,**
**et al.,**
                **Defendants.**
_____

## SCREENING ORDER

Plaintiff Michael James Pouchert, proceeding pro se, filed this action under 42 U.S.C. § 1983 alleging that eight defendants violated his civil rights. Specifically, he alleges that there was fraud underlying certain findings in a state court's order for modification of a child custody order, the state court "fabricated" a waiver of counsel at a child support hearing where he could have faced imprisonment, he was falsely arrested based on warrants with no jurisdiction, the state has refused to tender certain discovery documents in an accessible manner, biased denial of various motions, and a state judge obstructed service of process in a different federal case. However, there are several problems with the complaint, which I describe below. For those reasons, I must dismiss the complaint and deny as moot the remaining motions. However, I will give plaintiff one opportunity to amend his complaint.

## I.      SCREENING STANDARD

Plaintiff paid the filing fee at the time he filed the complaint. However, district courts are permitted to screen every complaint, regardless of a plaintiff's fee status. 28 U.S.C. § 1915(e)(2)(B); *Hoskins v. Poelstra*, 320 F.3d 761, 763 (7th Cir. 2003) (citing *Rowe v.*

*Shake*, 196 F.3d 778, 783 (7th Cir. 1999)). Prompt screening of a complaint prior to service, especially when the plaintiff is pro se, serves the important function of protecting putative defendants from the expense of hiring an attorney to respond to patently frivolous claims brought either out of ignorance of the law or with intent to embarrass or harass. *Hoskins*, 320 F.3d at 763. Given the increase in lawsuits filed by nonlawyers who are not bound by the Rules of Professional Responsibility and the substantial cost of retaining an attorney for federal litigation, prompt screening of pro se complaints by the court would seem an essential tool for fulfilling the command that the Federal Rules of Civil Procedure "be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1.

At the same time, when exercising its screening discretion, a court "must take care that initial impressions, and the lack of an adversarial presentation, not lead to precipitate action that backfires and increases the duration and cost of the case." *Hoskins*, 320 F.3d at 763. When screening a complaint, the court must determine whether the complaint states at least a plausible claim for which relief may be granted. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also* Fed. R. Civ. P. 8.

## II.     BACKGROUND

Plaintiff's complaint is extremely long, but I gather the following factual allegations from the complaint. The source of plaintiff's alleged injuries is a series of cases related to child custody proceedings. In April of 2019, another party to the child custody proceedings introduced evidence that plaintiff believes is false or fraudulent. ECF No. 1 at 5. Then, in

February of 2021, Judge Martin De Vries modified the custody and support order while "refus[ing] to adjudicate the fraud [plaintiff] had presented." *Id.* at 6. In May of 2023, Judge De Vries held another hearing. *Id.* at 7. At that time Judge De Vries made a record that plaintiff was knowingly and willingly waiving his right to counsel and was aware that rulings made at the hearing might lead to his imprisonment.[1] *Id.* Plaintiff, however, contends that this was untrue, and he stated he did not understand, did not accept, and did not consent. *Id.* At a subsequent hearing in August of 2023, Judge De Vries found that plaintiff was actually *not* waiving his right to counsel. *Id.*

In September of 2023, Judge De Vries entered a finding of contempt, which lead to a body-execution warrant.[2] *Id.* at 8. It remained unexecuted through July 1, 2025. *Id.* at 9. Judge De Vries then issued a second body execution warrant on the same basis in March of 2025, which was also unexecuted through July 1, 2025. *Id.* On June 17, 2025, police showed up at plaintiff's house and attempted to arrest him, but no arrest occurred. *Id.* Plaintiff then filed a "demand for proof of jurisdiction." *Id.*

On July 1, 2025, plaintiff was arrested pursuant to the body execution warrants. *Id.* at 9. As a result of that arrest, a criminal complaint was filed against plaintiff. *Id.*; *see also State v. Pouchert*, 2025CM1074 (Waukesha Cnty. Cir. Ct.).[3] The docket for his criminal

---

[1] Exhibits attached to the complaint reveal that the opposing party in the family court proceedings made a "motion for commitment to county jail for violation of all conditions purging contempt and fraud," which was granted by the Court. ECF No. 1-1 at 29. Plaintiff was warned that his "failure to meet one of these conditions is very likely to result in his commitment to the County Jail." *Id.*

[2] The attached body execution warrant shows that this was issued for failure to comply with the conditions as noted in footnote 1. *See* ECF No. 1-1 at 34; n.1 *supra*.

[3] Available at
https://wcca.wicourts.gov/caseDetail.html?caseNo=2025CM001074&countyNo=67&index=0 .

case reveals that he was charged with three misdemeanors: resisting/failing to stop, resisting or obstructing an officer, and carrying a concealed weapon. The case is currently set for trial beginning on September 1, 2026.

In connection with that case, plaintiff sought written discovery. ECF No. 1 at 10. Plaintiff alleges that the State is "conditioning" his receipt of discovery on payment of a transcription and reproduction fee. *Id*. Plaintiff alleges that this is illegal because he has disabilities. *Id*. On May 6, 2026, Judge Michael Aprahamian, the judge assigned to the criminal case, issued an order directing plaintiff to "refrain from filing in this case any issues or challenges related to other cases." *Id*. On June 4, 2026, Judge Aprahamian denied four motions. *Id*. at 11. Plaintiff then sought reassignment of the matter to another judge, but no action has been taken. *Id*.

In addition, plaintiff alleges that he attempted to serve Judge De Vries pertaining to another case filed in this district, Case No. 26-CV-516 (E.D. Wis.).[4] However, according to plaintiff's telling, Judge De Vries and Dale Schmidt, Sheriff of Dodge County, obstructed service by stating that the Clerk of Court could not accept service of federal process by statute and that personal service on a sitting circuit judge could not be effected at a courthouse. ECF No. 1 at 12.

### III.   ANALYSIS

There are numerous problems with plaintiff's complaint. First, the complaint itself runs afoul of Rule 8 because it does not present a "short and plain statement the claim." Fed. R. Civ. P. 8(a)(2). Instead, it is 156 pages long and includes 17 exhibits. But, more

---

[4] Plaintiff filed this action as an "emergency petition for a writ of habeas corpus." *See Pouchert v. Boese*, 26-cv-516. Judge Byron Conway dismissed the claim as frivolous and ultimately seeking to overturn his child support order. *Id*., ECF No. 3.

4

importantly, almost all of the defendants plaintiff names are immune from suit. In those instances where the defendant is not immune, plaintiff has generally failed to state a claim upon which relief can be granted. Finally, several doctrines of jurisdiction and abstention prevent me from adjudicating these issues. I explain each of these in detail below.

**A. Claims**

Plaintiff submits eight claims against various groupings of defendants. In his first claim, he alleges violations of the Fourteenth Amendment through insufficient due process and structural bias against Judges De Vries, Aprahamian, and Jack A. Pitzo. The only allegation plaintiff makes against Judge Pitzo is that he should recuse himself from one of plaintiff's family law cases because he previously worked as a District Attorney with the individuals who are prosecuting him in his related criminal proceeding. ECF No. 1 at 15. But all of plaintiff's complaints against the judges are for actions taken in their judicial capacity. Thus, they are all entitled to absolute immunity. *Pierson v. Ray*, 386 U.S. 547, 553–54 (1967). Similarly, plaintiff's second claim is an allegation that his Sixth and Fourteenth Amendment rights were violated because Judge De Vries "fabricated" a waiver of counsel. However, this action was also taken in his judicial capacity and therefore, he is entitled to absolute immunity. Plaintiff may not proceed on either of these claims.

Plaintiff's third claim is unlawful seizure in violation of the Fourteenth Amendment. He bases this claim on his allegation that Judge De Vries "refused" to adjudicate whether a document was fraudulent, which allegedly deprived the court of subject-matter jurisdiction, making his arrest warrant void and his arrest illegal. Plaintiff brings this claim against Judge De Vries and Kyle Palm. Palm was the officer who arrested plaintiff based

5

on the two outstanding body execution warrants and who submitted a probable cause foundation. For the reasons I've already explained, Judge De Vries is absolutely immune from liability for his actions taken in his judicial capacity. As for Palm, plaintiff has failed to state a claim against him. There is no legally supportable reason why Judge De Vries's alleged "refusal" to adjudicate whether a document was fraudulent would have any effect on subject-matter jurisdiction.[5] Indeed, *federal* courts are courts of limited subject matter jurisdiction, while *state* courts are not. Therefore, this claim must also be dismissed.

I will leave aside for the moment plaintiff's fourth claim, which is the only one for which plaintiff may have a colorable claim. Plaintiff's fifth claim alleges violations of the Fourteenth Amendment and Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132, for conditioning delivery of accessible discovery materials on a fee. He also alleges these are, effectively, *Brady* violations because the prosecution is required to disclose to the defense all evidence material to guilt or punishment. *See Brady v. Maryland*, 373 U.S. 83, 87 (1963). Plaintiff brings this claim against the two Assistant District Attorneys for Waukesha County, Randy Sitzberg and J.J. Crawford, who are prosecuting his criminal case. But because these prosecutors are acting in their prosecutorial capacity, they are entitled to absolute immunity for actions taken as an advocate for the state in prosecutorial proceedings. *Buckley v. Fitzsimmons*, 509 U.S. 259, 269–278 (1993). Therefore, this claim cannot stand against the two Assistant District Attorneys.

---

[5] Additionally, these types of questions about "jurisdiction" sound in sovereign citizen theory, which the Seventh Circuit has repeatedly rejected as frivolous and devoid of any conceivable merit. *See Bey v. State*, 847 F.3d 559, 559–560 (7th Cir. 2017) (collecting cases); *U.S. v. Benabe*, 654 F.3d 756, 767 (7th Cir. 2011) (collecting cases).

Plaintiff's sixth claim is that Kyle Palm, the police officer who arrested him, did so in retaliation for plaintiff's speech as protected by the First Amendment. Specifically, plaintiff claims that he had petitions "challenging the jurisdictional predicate of the enforcement instruments outstanding against him." ECF No. 1 at 21. Plaintiff mistakenly believes that there is some sort of "protected-speech window" during which he could not be arrested by virtue of filing the motions regarding jurisdiction. Aside from the fact that I am highly skeptical about plaintiff's jurisdictional argument, see footnote 5, *supra*, I am aware of no such law extending this type of alleged protection.[6] Moreover, even if this claim was legally meritorious, it could not be heard under the *Younger* abstention doctrine because it squarely implicates his prosecution in the underlying criminal case. *See Younger v. Harris*, 401 U.S. 37, 44–45 (1971). Therefore, plaintiff also may not proceed with this claim.

Plaintiff's seventh claim is that Dale Schmidt, Sheriff of Dodge County, obstructed federal court process. Specifically, he alleges that in a prior federal suit, plaintiff sought to serve Judge De Vries through a process server, but Sheriff Schmidt told the process server "three false statements" to block that service. ECF No. 1 at 22. However, plaintiff's claim fails on two counts. Plaintiff brings this claim as a violation of 42 U.S.C. § 1985(2), conspiracy to interfere with civil rights by obstructing justice. However, a § 1985(2) claim

---

[6] Plaintiff cites two cases allegedly for the proposition that he could not be arrested while these motions were pending. One of the cases involved a *Bivens* claim for malicious prosecution after the conclusion of criminal proceedings. *See generally Hartman v. Moore*, 547 U.S. 250 (2006); *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971). The other case plaintiff cited is wholly inapposite, pertaining to First Amendment retaliation claims related to a board of education's decision not to rehire a teacher. *See generally Mt. Healthy City School Dist. Bd. of Educ. V. Doyle*, 429 U.S. 274 (1971). Therefore, neither lends credence to his claim.

requires a showing of "class-based discriminatory animus." *Stewart v. Derbort*, No. 25-2651, 2026 WL 1951619, at *3 (7th Cir. July 6, 2026) (citing *Nowicki v. Ullsvik*, 69 F.3d 1320, 1325 (7th Cir. 1995)). Plaintiff has not made any such argument and I don't believe he could. While plaintiff may belong to a protected class (e.g., based on his disability), he would have to allege and prove that Sheriff Schmidt knew this and took the action *because of* his protected class status. Since plaintiff had not yet served anyone and service was being done by a process server, it seems unlikely (if not impossible) that Sheriff Schmidt knew it was this plaintiff who was behind the other federal suit, let alone plaintiff's disabilities. Therefore, he couldn't have acted upon that information.

Moreover, even if plaintiff could clear that hurdle, a party must have standing to bring the underlying claim. Section 1985(2) requires a conspiracy "for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny any citizen the equal protection of the laws." Plaintiff's claim is, essentially, that because of Sheriff Schmidt's purposeful lies, he was impeded in accessing the courts. But that is not true. By plaintiff's own admission, the process server was able to leave the documents with a registered agent only *twenty-nine minutes later*. ECF No. 1 at 23; ECF No. 1-1 at 9. Thus, there was no impediment to his access to the courts. Plaintiff successfully served the intended person—Judge De Vries— and the lawsuit commenced in a standard manner. *See Stewart*, 2026 WL 1951619, at *3 (explaining that for a denial of access claim, plaintiff must have standing). Therefore, plaintiff cannot bring this claim.

Finally, plaintiff's fourth claim is against Judge Aprahamian and the State of Wisconsin, alleging violations of the Fourteenth Amendment and Title II of the ADA. This

claim is based on plaintiff's assertion that he is disabled, cannot access discovery from the State as currently presented, and that to receive discovery in a way that is accessible he must pay a $24.35 fee. Again, Judge Aprahamian is absolutely immune for actions taken in his judicial capacity. As to the State, the issue is slightly more complicated. Under the Eleventh Amendment, private parties cannot file a federal lawsuit against a state unless the state waives its Eleventh Amendment immunity by consenting to the suit or Congress unequivocally abrogates the state's immunity. *Ameritech Corp. v. McCann*, 297 F.3d 582, 585 (7th Cir. 2002). Section 1983 does not abrogate sovereign immunity. *Kroll v. Bd. of Trs. of U. Ill.*, 934 F.2d 904, 909 (7th Cir. 1991). However, Title II of the ADA can be enforced against states in cases "implicating the accessibility of judicial services." *Tennessee v. Lane*, 541 U.S. 509, 530 (2004).

But this does not end the inquiry. Since this claim implicates an open and ongoing state criminal proceeding, I must consider whether *Younger* abstention is appropriate. *See Younger v. Harris*, 401 U.S. 37, 44–45 (1971). Plaintiff argues—and I agree—that *Younger* abstention is inappropriate here. However, I disagree with how plaintiff arrived at that conclusion. Plaintiff argues that the bad faith or harassment exception applies here. *See FreeEats.com, Inc. v. Indiana*, 507 F.3d 590, 596 (7th Cir. 2007) (citing *Huffman v. Pursue, Ltd*., 420 U.S. 592, 611 (1975)). I disagree that plaintiff has sufficiently shown bad faith or harassment. Instead, I find that this issue does not interfere with the state's ability to proceed with its prosecution or in any way enjoin the judicial proceedings, which is the central purpose of *Younger* abstention. Indeed, plaintiff has indicated that the prosecutors *are* providing him with discovery, but that it is formatted inaccessibly. This matter only concerns the accessibility of certain documents which are provided to plaintiff.

9

Therefore, on this one, narrow issue, I find that plaintiff has sufficiently stated a claim. Specifically, I will permit plaintiff to proceed on a claim that the State of Wisconsin violated his rights under Title II of the ADA by conditioning receipt of accessible discovery materials on payment. However, because plaintiff's complaint is so long and includes so many unrelated claims on which he cannot proceed, I will still direct him to file an amended complaint with this claim. I include more details on the parameters of the amended complaint below.

**B. Jurisdictional Bars and Abstention Doctrines**

There are also several jurisdictional and abstention doctrines that separately bar my adjudication of most of these issues. First, there is the most obvious matter that these alleged injuries are related to three open and ongoing state proceedings. One is a family court matter, one is a civil suit brought by the plaintiff, and one is a criminal suit in which this plaintiff is the defendant. Plaintiff is obviously aware of the *Younger* abstention doctrine, having referenced it in his complaint. But I will once again emphasize that the bad faith and harassment exception does not apply here. Just because plaintiff disagrees with the actions and findings of the state court judges does not mean plaintiff is being harassed or subjected to actions taken in bad faith.

Second, the *Rooker-Feldman* doctrine holds that "federal district courts lack jurisdiction over 'cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.'" *T. M. v. Univ. of Maryland Med. Sys. Corp.*, Case No. 25-197, 2026 WL 1751823, at *3 (U.S. June 18, 2026) (quoting *Exxon Mobil Corp.* v. *Saudi Basic Industries Corp.*, 544 U. S. 280, 284 (2005)). To the

10

extent that the open cases resolve against defendant's interest, there is a high probability that I would not have jurisdiction to adjudicate any issues that require me to, effectively, change the outcome of those cases.

Finally, these cases are all intertwined with plaintiff's child custody and support issues being litigated in state family court. There is a domestic-relations exception to federal court jurisdiction, as acknowledged by the Seventh Circuit. *See J.B. v. Woodard*, 997 F.3d 714, 723 (7th Cir. 2021) (when adjudication of claims "threaten[s] interference with and disruption of local family law proceedings—a robust area of law traditionally reserved for state and local government" federal courts must "stand down"). This exception covers, among other things, child custody orders and, particularly, anything that disturbs or affects the possession of property in the custody of a state court, including child support. *Kowalski v. Boliker*, 893 F.3d 987, 995 (7th Cir. 2018). Therefore, to the extent that any desired relief requires me to modify a child custody or child support order, I would be barred from doing so.

### C. Amending the Complaint

"The usual standard in civil cases is to allow defective pleadings to be corrected, especially in early stages, at least where amendment would not be futile." *Abu-Shawish v. United States*, 898 F.3d 726, 738 (7th Cir. 2018). "This proposition has even more force in pro se cases, like this, in which pleading standards are relaxed." *Stoller v. Walworth Cnty.*, 770 F. App'x 762, 764 (7th Cir. 2019). Only if it is "certain from the face of the complaint that any amendment would be futile or otherwise unwarranted" is it appropriate to dismiss without granting leave to amend. *Harris v. Meisner*, No. 20-2650, 2021 WL

11

5563942, at *2 (7th Cir. Nov. 29, 2021) (emphasis in original) (quoting *Runnion v. Girl Scouts of Greater Chi. and Nw. Ind.*, 786 F.3d 510, 520 (7th Cir. 2015)).

As I have explained, plaintiff's complaint has one claim that can move forward: that the State of Wisconsin violated his rights under Title II of the ADA by conditioning receipt of accessible discovery materials on payment. In order to proceed on this claim, plaintiff must submit an amended complaint which is a short and plain statement of the claim, as required by Federal Rule of Civil Procedure 8. At the pleading stage, plaintiffs are "not required to plead [specific] facts or legal theories or cases or statutes." *Shah v. Inter-Continental Hotel Chicago Operating Corp.*, 314 F.3d 278, 282 (7th Cir. 2002). Plaintiff should not focus on making legal arguments, only presenting the facts underlying the claim. The amended complaint must be submitted on the enclosed Non-Prisoner Amended Complaint Form, or otherwise total **no more than ten pages.**[7]

Plaintiff is further warned that this is **not** an opportunity to bring new claims. He is permitted **only** to proceed on the singular claim I have identified herein. Plaintiff will have **twenty-one days** from the entry of this order to submit his amended complaint. If he needs more time to do so, he may request an extension of time. Upon receipt of the amended complaint, I will re-screen the complaint. At that time, if plaintiff still wants service by the U.S. Marshals Service, he may resubmit his motion for such. Finally, plaintiff is advised that an amended complaint completely supersedes the original complaint. *Scott v. Chuhak & Tecson, P.C.*, 725 F.3d 722, 782 (7th Cir. 2013). Therefore,

---

[7] This page number includes exhibits, although at this stage plaintiff is not required to submit any evidence and I would strongly suggest that plaintiff not include exhibits with the amended complaint.

12

plaintiff should be sure that his amended complaint contains all facts relevant to the claim and may not rely on his original complaint in any capacity.

### IV.    CONCLUSION

For the reasons stated, **IT IS ORDERED** that plaintiff's complaint is **DISMISSED.**

**IT IS FURTHER ORDERED** that plaintiff's motions for a temporary restraining order and preliminary injunction, and for an order directing service by the United States Marshal are **DENIED as moot**.

**IT IS FURTHER ORDERED** that plaintiff may amend his complaint within **twenty-one days of the date of this order,** or by August 17, 2026**,** to cure the deficiencies identified herein. If the Court does not receive an amended complaint by that deadline, the Clerk of Court will enter final judgment.

**IT IS FURTHER ORDERED** that the Clerk of Court mail plaintiff a copy of the Non-Prisoner Amended Complaint form.

Dated at Milwaukee, Wisconsin, this 27th day of July, 2026.


                                        **s/*Lynn Adelman*_____**
                                        LYNN ADELMAN
                                        United States District Judge

13